UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/20/19

-------------------------------------------------------------------- X
                                                :
UNITED STATES OF AMERICA                        :
                                                :            ORDER
                - v. -                           :
                                                :
JOSHUA TORRES,                                  :        S1 19 Cr. 287 (VM)
                                                :
                Defendant.                      :
                                                :
                                                :
-------------------------------------------------------------------- X

WHEREAS, with the defendant's consent, his guilty plea allocution was taken before a United States Magistrate Judge on December 12, 2019;

WHEREAS, a transcript of the allocution was made and thereafter was transmitted to the District Court; and

WHEREAS, upon review of that transcript, this Court has determined that the defendant withdrew his prior guilty plea and entered a guilty plea to the Superseding Information knowingly and voluntarily and that there was a factual basis for the guilty plea;

IT IS HEREBY ORDERED that the defendant's guilty plea is accepted.

SO ORDERED:

Dated: 20 December 2019
       New York, New York

HONORABLE VICTOR MARRERO
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
                       :
UNITED STATES OF AMERICA        :
                       :
     - v. -           :    **SUPERSEDING INFORMATION**
                       :
JOSHUA TORRES,            :    S1 19 Cr. 287 (VM)
                       :
        Defendant.      :
                       :
- - - - - - - - - - - - - - - - - - X

**COUNT ONE**

The United States Attorney charges:

On or about January 8, 2019, in the Southern District

of New York and elsewhere, JOSHUA TORRES, the defendant, knowing

he had previously been convicted of a crime punishable by

imprisonment for a term exceeding one year, knowingly did

possess ammunition, to wit, a Federal .380 caliber bullet, which

had previously been shipped and transported in interstate and

foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

GEOFFREY S. BERMAN
United States Attorney



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 1 2 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOSHUA TORRES,

Defendant.

## SUPERSEDING INFORMATION

S1 19 Cr. 287 (VM)

(Title 18, United States Code, Section
922(g)(1).)

GEOFFREY S. BERMAN
United States Attorney.

Jccdtorp
                                  Plea

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,                    New York, N.Y.

4                v.                              S1 19 Cr. 0287(VM)

5   JOSHUA TORRES,

6                        Defendant.

7   ------------------------------x

8
                                              December 12, 2019
9                                             10:45 a.m.

10
    Before:
11
                        HON. SARAH L. CAVE,
12
                                              Magistrate Judge
13

14                            APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:  MICHAEL D. LONGYEAR
17       Assistant United States Attorney

18  FEDERAL DEFENDERS OF NEW YORK INC.
         Attorneys for Defendant
19  BY:  SYLVIE LEVINE

20

21

22

23

24

25

Jccdtorp

Plea

1    THE CLERK: Your Honor, this is the matter of the

2  United States v. Joshua Torres, 19 Crim. 287.

3    Counsel, please state your appearance for the record.

4    MR. LONGYEAR: Good morning, your Honor. Michael

5  Longyear on behalf of the United States.

6    THE COURT: Good morning, Mr. Longyear.

7    MS. LEVINE: Good morning, your Honor. The Federal

8  Defenders of New York by Sylvie Levine on behalf of Mr. Torres.

9    THE COURT: Good morning, Ms. Levine.

10    Good morning Mr. Torres. I'm Magistrate Judge Cave.

11  The purpose of this proceeding is to make sure that you

12  understand your rights, to decide whether you are pleading

13  guilty of your own free will, and to make sure you are pleading

14  guilty because you are guilty and not for some other reason.

15    I have before me a form entitled "Consent to Proceed

16  Before a United States Magistrate Judge on a Felony Plea

17  Allocution" that you have signed. What this form says is that

18  knowing you have the right to have this plea taken by a United

19  States District Judge, you are agreeing to have the plea taken

20  by me, a United States Magistrate Judge. You will still be

21  entitled to all the same rights and protections as if you were

22  before a district judge. Among other things, if you are found

23  guilty, you will be sentenced by a district judge.

24    Do you understand all of that, sir?

25    THE DEFENDANT: yes.

Jccdtorp
                              Plea

1           THE COURT:  OK.  So, I will accept your consent.

2           I will ask the clerk to swear in the defendant and

3    take the Waiver of Indictment.

4           THE CLERK:  Please stand and raise your right hand.

5           (The defendant was sworn)

6           THE CLERK:  Please state your name for the record.

7           THE DEFENDANT:  Joshua Torres.

8           THE CLERK:  Have you signed the Waiver of Indictment?

9           THE DEFENDANT:  Yes.

10          THE CLERK:  Before you signed it, did you discuss it

11   with your attorney?

12          THE DEFENDANT:  Yes.

13          THE CLERK:  Did your attorney explain it to you?

14          THE DEFENDANT:  Yes.

15          THE CLERK:  Do you understand what you are doing?

16          THE DEFENDANT:  Yes.

17          THE CLERK:  Do you understand that you are under no

18   obligation to waive indictment?

19          THE DEFENDANT:  Yes.

20          THE CLERK:  Do you understand that if you do not waive

21   indictment, if the government wants to prosecute you, they will

22   have to present this case to a grand jury, which may or may not

23   indict you?

24          THE DEFENDANT:  Yes.

25          THE CLERK:  Do you understand that by signing this

Jccdtorp
Plea

1  Waiver of Indictment, you have given up your right to have this
2  case presented to the grand jury?

3              THE DEFENDANT: Yes.

4              THE CLERK: Do you understand what a grand jury is?

5              THE DEFENDANT: Yes.

6              THE CLERK: Have you seen a copy of the information?

7              THE DEFENDANT: Yes.

8              THE CLERK: Do you waive its public reading?

9              THE DEFENDANT: Yes.

10             THE CLERK: And how do you plead?

11             THE DEFENDANT: Guilty.

12             THE COURT: You can be seated.

13             Mr. Torres, to begin, do you understand that any
14  statements you make here may be used against you in a
15  prosecution for perjury or making false statements?

16             THE DEFENDANT: Yes.

17             THE COURT: If at any time you don't understand any of
18  my questions or if you want to consult with Ms. Levine, just
19  say so, because it's very important that you understand every
20  question before you answer it.

21             Tell me again your full name.

22             THE DEFENDANT: Joshua Torres.

23             THE COURT: How old are you?

24             THE DEFENDANT: 21.

25             THE COURT: Are you a citizen of the United States?

Jccdtorp
Plea

1        THE DEFENDANT:  Yes.

2        THE COURT:  Are you able to read and write in English?

3        THE DEFENDANT:  Yes.

4        THE COURT:  OK.  What is the extent of your formal

5   education?  How far did you go in school?

6        THE DEFENDANT:  Oh, eleventh grade.

7        THE COURT:  Eleventh grade.  Are you now or have you

8   recently been in the continuing care of a doctor or

9   psychiatrist for any reason?

10        THE DEFENDANT:  No.

11        THE COURT:  Have you ever been hospitalized in the

12   past for mental illness?

13        THE DEFENDANT:  No.

14        THE COURT:  For alcoholism?

15        THE DEFENDANT:  What?

16        THE COURT:  Have you been in the hospital for

17   alcoholism?

18        THE DEFENDANT:  No.

19        THE COURT:  For narcotics addiction?  Have you been in

20   the hospital for narcotics addiction?

21        THE DEFENDANT:  Yeah, I was in rehab.

22        THE COURT:  OK.  And how long ago was that?

23        THE DEFENDANT:  That was recent.  That was last year.

24        THE COURT:  In 2018?

25        THE DEFENDANT:  Mm-hmm.

Jccdtorp
Plea

1    THE COURT: How long was that program?

2    THE DEFENDANT: Like two months you could say.

3    THE COURT: OK. Are you still in that program, sir?

4    THE DEFENDANT: No.

5    THE COURT: Not anymore, OK.

6    As you sit here today, are you under the influence of

7  any mind-altering drug or alcoholic drink?

8    THE DEFENDANT: No.

9    THE COURT: OK. Have you been able to understand

10  everything that I have said so far?

11    THE DEFENDANT: Yes.

12    THE COURT: OK. And you were asked this before but I

13  just want to ask it again: You have seen a copy of the

14  Superceding Information in this case, correct?

15    THE DEFENDANT: Yes.

16    THE COURT: Have you had a chance to read it?

17    THE DEFENDANT: Yes.

18    THE COURT: Have you had a chance to -- do you

19  understand what it says you did?

20    THE DEFENDANT: Yes.

21    THE COURT: OK. Have you had a chance to discuss the

22  charges and how you wish to plead with Ms. Levine?

23    THE DEFENDANT: Yes.

24    THE COURT: Are you satisfied with Ms. Levine's

25  representation of you?

Jccdtorp
Plea

1      THE DEFENDANT:  Yes.

2      THE COURT:  Have you had a full opportunity to discuss

3   this case with her?

4      THE DEFENDANT:  Yes.

5      THE COURT:  Are you ready to enter a plea today?

6      THE DEFENDANT:  Yes.

7      THE COURT:  Count One of the Superseding Information

8   charges that you, Joshua Torres, knowing that you had

9   previously been convicted of a crime punishable by imprisonment

10   for a term exceeding one year, knowingly did possess

11   ammunition, namely, a Federal .38 caliber bullet, which had

12   previously been shipped and transported in interstate and

13   foreign commerce, in violation of 18 U.S.C., Section 922(g)(1).

14      Do you understand this charge?

15      THE DEFENDANT:  Yes.

16      THE COURT:  And how do you wish to plead?

17      THE DEFENDANT:  Guilty.

18      THE COURT:  OK.  With respect to the count charging

19   you with possession of ammunition, I want you to understand

20   that the maximum penalty is a prison term of ten years, a term

21   of supervised release of three years, a fine of as much as

22   $250,000 or twice what was gained because of the criminal

23   activity or twice what someone other than yourself lost because

24   of the criminal activity, and a mandatory special assessment of

25   $100.

Jccdtorp
Plea

1    In addition, the Court could order you to pay
2    restitution to any victims.

3    Do you understand these maximum penalties that I have
4    just described to you?

5    THE DEFENDANT:  Yes.

6    THE COURT:  OK.  Do you also understand that if as
7    part of your sentence you are placed on a term of supervised
8    release and you then violated the conditions of that release,
9    you could face an additional term of imprisonment?

10    THE DEFENDANT:  Yes.

11    THE COURT:  You told me earlier you are a citizen of
12    the United States.  By law, I must still tell you that if in
13    fact you are not a United States citizen, a guilty plea means
14    you may be removed from the United States and denied admission
15    to the United States or citizenship in the future.  Do you
16    understand that?

17    THE DEFENDANT:  Yes.

18    THE COURT:  OK.  Do you understand that you have a
19    right to plead not guilty to this charge and a right to a jury
20    trial, if you wish?

21    THE DEFENDANT:  Yes.

22    THE COURT:  Do you understand that if you pled not
23    guilty and went to trial, you would be presumed innocent and
24    the burden would be on the government to prove your guilt
25    beyond a reasonable doubt?

Jccdtorp

Plea

1       THE DEFENDANT: Yes.

2       THE COURT: So I want you to understand that there are

3    a number of other rights that you would have if you pled not

4    guilty and went to trial. If you went to trial, you would be

5    entitled to be represented by an attorney at all stages of the

6    case, and if you could not afford to hire an attorney, the

7    Court would provide one to you for free. At trial, you would

8    be entitled to confront and cross-examine any witnesses called

9    by the government to testify against you; you would be entitled

10   to testify on your own behalf; you could call witness and

11   present evidence; and the Court would compel the attendance of

12   witnesses you wished to call at trial. At a trial you would

13   not be required to testify against yourself.

14       Do you understand all of those rights I have just

15   described?

16       THE DEFENDANT: Yes.

17       THE COURT: OK. Do you understand that you give up

18   all these rights if you plead guilty?

19       THE DEFENDANT: Yes.

20       THE COURT: Do you understand that if you enter a

21   guilty plea, you will not be able to withdraw the plea, there

22   will be no trial, and the only remaining step in this case will

23   be sentencing?

24       THE DEFENDANT: Yes.

25       THE COURT: OK. Do you understand that even if you

Jccdtorp

Plea

1    are surprised or disappointed by your sentence, you will still

2    be bound by your guilty plea?

3              THE DEFENDANT:  Yes.

4              THE COURT:  OK.  I have before me a letter dated

5    December 2, 2019 from the U.S. Attorney to your attorney

6    containing a plea agreement.

7              Have you read that letter?

8              THE DEFENDANT:  Yes.

9              MS. LEVINE:  Your Honor, if I may?

10             THE COURT:  Yes.

11             MS. LEVINE:  Before we get into the details of the

12   plea agreement, I just want to place on the record that Judge

13   Marrero granted Mr. Torres permission to withdraw his

14   previously entered plea of guilty and replace it with the plea

15   that we are proceeding with today.

16             THE COURT:  OK.

17             MS. LEVINE:  And I think the Court may just want to

18   allocute Mr. Torres to make sure he understands that he wishes

19   to withdraw his previously entered plea of guilty.

20             THE COURT:  Certainly.

21             MS. LEVINE:  And that he understands this proceeding

22   is replacing the previous plea.

23             THE COURT:  I can certainly do that.

24             So, Mr. Torres, I understand that you previously enter

25   a plea of not guilty in this case and that today you are here

Jccdtorp
                              Plea

1 | to withdraw that not guilty plea, correct?

2 | MS. LEVINE:  I'm sorry, your Honor.  He previously

3 | entered a plea of guilty.

4 | THE COURT:  Oh, guilty.  OK.

5 | MS. LEVINE:  We did a whole plea proceeding.

6 | THE COURT:  I see.

7 | MS. LEVINE:  There was a different plea agreement.

8 | THE COURT:  Understood.

9 | MS. LEVINE:  And Judge Marrero has authorized the

10 | withdrawal of that guilty plea.

11 | THE COURT:  I'm sorry.  OK.

12 | So, Mr. Torres, you previously entered a guilty plea

13 | to a different charging document, a different information.  Do

14 | you recall that?

15 | THE DEFENDANT:  Yes.

16 | THE COURT:  OK.  And so the purpose of today's

17 | proceeding is to withdraw your prior guilty plea to that other

18 | charging document and to enter a new plea, a new guilty plea,

19 | to the Superceding Information that we talked about before.

20 | Do you understand that that's what we are doing today?

21 | THE DEFENDANT:  Yes.

22 | THE COURT:  OK.  And the plea agreement that I am

23 | going to discuss in just a moment replaces the plea agreement

24 | that may have been exchanged before in this case and that prior

25 | plea agreement is no longer in effect.

Jccdtorp
Plea

1        THE DEFENDANT: Yes.

2        THE COURT: And so the plea agreement that is in place

3   now and going forward is the one dated December 2, 2019 that I

4   am about to describe in a moment.

5        THE DEFENDANT: Yes.

6        THE COURT: OK. Is that sufficient, Ms. Levine?

7        MS. LEVINE: Yes. Thank you.

8        MR. LONGYEAR: Yes, your Honor.

9        THE COURT: Thank you for the clarification. I

10  appreciate it.

11       OK. So turning to the December 2, 2019 letter from

12  the U.S. Attorney to your attorney containing the plea

13  agreement that is now in effect, and you, again, you've read

14  that with Ms. Levine?

15       THE DEFENDANT: Yes.

16       THE COURT: Did you sign it on the last page, sir?

17  That is your signature?

18       THE DEFENDANT: Yes.

19       THE COURT: OK. And before you signed it, did you

20  discuss it with Ms. Levine?

21       THE DEFENDANT: Yes.

22       THE COURT: And did she explain to you all of its

23  terms and conditions?

24       THE DEFENDANT: Yes.

25       THE COURT: OK. Apart from what is contained in the

Jccdtorp
Plea

1  letter, apart from what's written in the December 2, 2019

2  letter, have any promises been made to you in order to convince

3  you to plead guilty?

4        THE DEFENDANT:  No.

5        THE COURT:  OK.  In reviewing the plea agreement, I

6  note that it contains an analysis of how part of our law of

7  sentencing known as the Sentencing Guidelines may impact on any

8  prison term in your case.  Based on that analysis, the

9  agreement states the conclusion that the guideline sentencing

10  range can be expected to be from 57 to 71 months.

11        Do you understand that?

12        THE DEFENDANT:  Yes.

13        THE COURT:  OK.  Do you understand that the sentencing

14  judge, however, is not bound by the calculation in the letter

15  and he will be free to do his own calculation, which may result

16  in a guideline range that's different than the one in the

17  letter?

18        THE DEFENDANT:  Yes.

19        THE COURT:  OK.  Do you understand that no matter what

20  sentencing range the sentencing judge believes is called for by

21  the guidelines, that range is just one of many factors that he

22  will consider in determining your sentence, and that he has the

23  discretion to give you a prison sentence below or above that

24  range, anywhere up to the maximum sentence of imprisonment of

25  ten years that I mentioned earlier?  Do you understand that?

Jccdtorp

1     THE DEFENDANT: Yes.

2     THE COURT: OK. Do you also understand that under the

3 terms of the plea agreement, if the judge sentences you to a

4 prison term that is 71 months or less, you are giving up your

5 right to appeal that sentence or to challenge it in any other

6 way such as through a writ of habeas corpus? Do you understand

7 that?

8     THE DEFENDANT: Yes.

9     THE COURT: OK. Also, do you understand that the plea

10 agreement says you cannot appeal any fine of $150,000 or less

11 and that you cannot appeal any lawful sentence of supervised

12 release?

13     THE DEFENDANT: Yes.

14     THE COURT: OK. Knowing all of this, do you still

15 wish to plead guilty to Count One of the Superseding

16 Information?

17     THE DEFENDANT: Yes.

18     THE COURT: Have any force or threats been used,

19 either direct or indirect, to influence how you plead today?

20     THE DEFENDANT: No.

21     THE COURT: OK. Is your plea voluntary, made of your

22 own free will?

23     THE DEFENDANT: Yes.

24     THE COURT: OK. Did you in fact commit the offense

25 that is charged in Count One of the Superseding Information?

Jccdtorp

Plea

1    THE DEFENDANT: Yes.

2    THE COURT: OK. Before I ask you to tell me what you
3  did, I will ask the government to summarize the elements of the
4  offense and any evidence they would have offered at trial.

5    MR. LONGYEAR: Thank you, your Honor.

6    Your Honor, if this case were to proceed to trial, the
7  government would have to prove the following elements beyond a
8  reasonable doubt: First, that the defendant knew that he had
9  previously been convicted of a crime punishable by imprisonment
10  for a term exceeding one year; second, the defendant knowingly
11  possessed the ammunition as charged; third, at the time the
12  defendant possessed the ammunition, the defendant had been
13  previously convicted of a crime punishable by imprisonment for
14  a term exceeding one year; and, fourth, that the possession of
15  the firearm was in or affecting interstate commerce.

16    In addition, the government would have to prove by a
17  preponderance of the evidence that the possession of the
18  ammunition took place in the Southern District of New York.
19  Here, the government would proffer that the defendant possessed
20  the ammunition in the Bronx.

21    With respect to the evidence at trial, the evidence
22  would consist of, among other things, surveillance video
23  showing the defendant in possession of a firearm and also which
24  was loaded and discharged. It would include the defendant's
25  prior felony conviction in state court·as well as ATF reports

Jccdtorp
                              Plea

1   showing that the ammunition had in fact moved in interstate

2   commerce.

3           THE COURT: OK. Thank you, Mr. Longyear.

4           Mr. Torres, can you tell me in your own words what you

5   did that makes you guilty of the charges against you?

6           THE DEFENDANT: On about January 8th, 2019 -- 2019 --

7   I possessed ammunition. I was in the Bronx at the time.

8   Before that I was convicted of a felony. I served an upstate

9   sentence to one to three years. I knew possessing the

10  ammunition was wrong and I really regret my actions for that

11  night.

12          THE COURT: OK. Thank you.

13          Are there any other questions that the government

14  would like me to ask?

15          MR. LONGYEAR: I know it is inferred from the

16  allocution but just that prior to his possession of the

17  ammunition, he knew he was a felon?

18          THE COURT: Sir, did you know before you possessed the

19  ammunition that you had been convicted of a felony subject to a

20  sentence of imprisonment longer than one year?

21          (Pause)

22          THE DEFENDANT: Yes.

23          THE COURT: OK.

24          THE DEFENDANT: Yes.

25          THE COURT: Any further questions, Ms. Levine?

Jccdtorp
### Plea

1        MS. LEVINE: No. Thank you, your Honor.

2        THE COURT: OK. On the basis of the defendant's

3    responses to my questions and my observation of his demeanor, I

4    find that he is fully competent to enter an informed plea at

5    this time. I also conclude that he understands the nature of

6    the charge and the consequences of his plea. Finally, I'm

7    satisfied that his plea is voluntary and that there is a

8    factual basis for it. Accordingly, I recommend that the

9    proffered plea to Count One of the Superseding Information be

10    accepted.

11        A presentence investigation report is hereby ordered.

12        Has Judge Marrero set a sentencing date?

13        MR. LONGYEAR: He has, your Honor. February 28, 2020,

14    at 2 p.m.

15        THE COURT: So, Mr. Torres, your sentencing will take

16    place in front of Judge Marrero on February 28, 2020 at 2 p.m.

17        Do you have a different date, Ms. Levine?

18        MS. LEVINE: Yes. Can I just check on it?

19        THE COURT: Sure. Of course.

20        MS. LEVINE: Actually, does the Court have the

21    one-page order that we handed up?

22        THE COURT: It says February 28, 2020, at 2 p.m.

23        MS. LEVINE: Great. Then that is fine.

24        Lastly, if the Court can just indicate on the

25    paperwork to Probation that this would be an update of the

Jccdtorp

Plea

1   prior presentence investigation?

2   THE COURT: All right. So this would be an update of

3   the presentence report?

4   MS. LEVINE: Precisely.

5   THE COURT: OK.

6   MS. LEVINE: Thank you.

7   THE COURT: Mr. Longyear, the prosecution case summary

8   for purposes of the presentence report should be delivered to

9   Probation no later than 14 days from today.

10   And, Ms. Levine, you and Mr. Torres should be

11   available to be interviewed by Probation no later than 14 days

12   from today for any updates as well.

13   MS. LEVINE: Yes, your Honor.

14   THE COURT: Anything further from either side?

15   MR. LONGYEAR: No, your Honor. Thank you.

16   MS. LEVINE: No, your Honor.

17   THE COURT: Thank you.

18   Thank you, Mr. Torres.

19   (Adjourned)

20

21

22

23

24

25



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 2, 2019

**BY ELECTRONIC MAIL**

Sylvie Levine, Esq.
Federal Defenders of New York
52 Duane Street, 10th Floor
New York, NY 10007
sylvie_levine@fd.org

     **Re:** *United States v. Joshua Torres*, S1 19 Cr. 287

Dear Ms. Levine:

     This letter sets forth the agreement (the "Agreement") between the Office of the United States Attorney for the Southern District of New York ("this Office") and defendant Joshua Torres ("the defendant").

     On or about April 23, 2019, the defendant pled guilty to a one-count Information charging him with using, carrying, and possessing a firearm, which was brandished, during and in relation to, and in furtherance of, a drug trafficking crime for which he may be prosecuted in a court of the United States, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii) (the "April 2019 Information"). Prior to the defendant's plea, the parties entered into a plea agreement dated March 18, 2019 (the "March 18, 2019 Agreement"). After discussion between the parties, and in order to avoid further litigation, the parties have agreed to the terms of this Agreement.

     The parties will accept the defendant's plea upon the following conditions: (1) he agrees to withdraw his previously entered plea of guilty to the April 2019 Information; (2) he agrees to plead guilty to the charges contained in superseding Information S1 19 Cr. 287 (VM) (the "S1 Information"); and (3) he agrees to the terms of this Agreement, which supersedes the March 18, 2019 Agreement in all respects.

     On the understandings specified herein, this Office will accept a guilty plea from the defendant to Count One of the S1 Information. Count One charges that on or about January 8, 2019, the defendant possessed ammunition in and affecting commerce after having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1). This charge carries a maximum sentence of ten years' imprisonment; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a mandatory $100 special assessment.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for (i) his possession of ammunition after having been convicted of a felony on or about January 8, 2019, as charged in Count One of the S1 Information, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

It is further understood that the defendant shall make restitution in an amount to be specified by the Court in accordance with Title 18, United States Code, Sections 3663, 3663A, and 3664. This amount shall be paid according to a plan established by the Court.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. The Guidelines provisions in effect as of November 1, 2018 apply in this case.

2. The Guidelines provision applicable to the crime charged in Count One is U.S.S.G. § 2K2.1.

3. Pursuant to U.S.S.G. § 2K2.1(a)(4), the base offense level for Count One is 20 because the defendant committed the instant offense subsequent to sustaining one felony conviction of a crime of violence – specifically, the conviction described in paragraph B.1 below.

4. Pursuant to U.S.S.G. § 2K2.1(b)(6)(B), 4 points are added because the firearm was used or possessed in connection with another felony offense, to wit, the shooting of another individual.[1]

Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous

---

[1] Pursuant to U.S.S.G. § 2K2.1(c), the applicable Guideline to the shooting would be U.S.S.G. § 2A2.2 for Aggravated Assault. Applying a base offense level of 14, with the specific offense characteristics of discharging a firearm (U.S.S.G. § 2A2.2(b)(2)(A)) and the victim suffering serious bodily injury (U.S.S.G. § 2A2.2(b)(3)(B), the total offense level would be 24. Accordingly, because the offense level is the same, the offense level under U.S.S.G. §§ 2K2.1(a)–(b) applies.

sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 21.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has seven criminal history points calculated as follows:

1. On or about October 28, 2014, the defendant was convicted in Bronx County Supreme Court of Robbery in the Third Degree, a felony, in violation of New York Penal Law § 160.05, and was sentenced to three years' probation. Because the defendant was adjudicated a youthful offender, this conviction results in one criminal history point pursuant to U.S.S.G. § 4A1.2(d)(2)(B).

2. On or about October 14, 2017, the defendant was convicted in New York County Criminal Court of Petit Larceny, a misdemeanor, in violation of New York Penal Law § 155.25, and was sentenced to time served. Pursuant to U.S.S.G. § 4A1.1(c), this conviction results in one criminal history point.

3. On or about January 24, 2018, the defendant was convicted in Westchester County Court of Criminal Possession of a Firearm, a felony, in violation of New York Penal Law § 265.01-B, and was sentenced to one to three years' imprisonment. Pursuant to U.S.S.G. § 4A1.1(a), this conviction results in three criminal history points.

4. Because the instant offense was committed while the defendant was on probation, two criminal history points are added pursuant to U.S.S.G. § 4A1.1(d).

In accordance with the above, the defendant's Criminal History Category is IV.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's Guidelines range would be 57 to 71 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 21, the applicable fine range is $15,000 to $150,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 57 to 71 months' imprisonment and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court

2019.07.08

employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $150,000, and the Government agrees not to appeal any fine that is greater than or equal to $15,000. The defendant also agrees not to appeal any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

2019.07.08

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By:

Michael D. Longyear
Assistant United States Attorney
(212) 637-2223

APPROVED:

Michael Gerber, Co-Chief
Lauren Potter, Co-Chief
Violent and Organized Crime Unit

AGREED AND CONSENTED TO:

Joshua Torres

$\frac{12/12/19}{\text{DATE}}$

APPROVED:

Sylvie Levine, Esq.
Attorney for Joshua Torres

$\frac{12/12/19}{\text{DATE}}$



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*



*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 13, 2019

**BY HAND**

The Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    **Re:** *United States* **v.** *Joshua Torres*, **S1 19 Cr. 287 (VM)**

Dear Judge Marrero:

    The Government respectfully submits this letter to request that the Court accept the guilty plea of the above-captioned defendant. The defendant pleaded guilty in front of United States Magistrate Judge Sarah L. Cave on December 12, 2019. Copies of a proposed Order accepting the plea, the Superseding Information, the transcript of the plea proceeding, and the plea agreement are enclosed.

    After conferring with Your Honor's chambers, sentencing has been scheduled for February 28, 2020 at 2:00 p.m.

                         Respectfully submitted,

                         GEOFFREY S. BERMAN
                       United States Attorney

               By:       *s/*

                     Michael D. Longyear
                     Assistant United States Attorney
                     (212) 637-2223

cc:    Sylvie Levine, Esq. (by electronic mail)